*Chouteau and others* vs. *Uhrig and others.*

CHOUTEAU AND OTHERS vs. UHRIG AND OTHERS..

1. In an action for the loss of a keel-boat alleged to have been sunk by the carelessness of defendants, an instruction " That defendants, or so many of them as were owners of the steamboat at the time of the hiring of the keel-boat, are liable, if the loss of the keel was occasioned by the omission of ordinary care on the part of the officers or hands employed on the steamboat," and requiring the jury to enquire whether there was such care—in running the boat in the night—after a storm arose, &c., does not assume facts properly to be found by a jury.

2. Where no evil results from an instruction, although strictly it may be improper, the judgment will not be reversed.

## APPEAL from St. Louis Court of Common Pleas.

SPALDING *for Appellants.*

I. The instruction given for the plaintiff below was erroneous in the following particulars : —

1. It defines the ordinary care which it requires to be, such as a prudent man exercises about "his own property," instead of saying such as a prudent commander of a boat exercises about his keel in towing the same.

2. The Court in this instruction tells the jury that the Mermaid proceeded in the "night time," and leaves it to the jury to say whether it was a want of proper care to proceed with the keel in the "night time,"—thus assuming this fact, and taking it from the jury : whereas the testimony on this head was conflicting. One of the witnesses, Chas. F. Deane, says, it was " early in the morning," and that as they went on it was light.

3. In this instruction the Court assumes the fact that, the plaintiffs were owners of the keel, and that they had hired the keel to the defendants, or bailed her in some way, and prohibits the jury from passing on this. As to the ownership of the keel, the only testimony was of Oscar Nicolas, who said, "that Andrew Uhrig, Joseph Uhrig, W. H. Hasterhagen, and John Schreiber, were owners of the Pearl, to which the Hornet belonged "in the fall of 1842," not stating at what time in the fall, nor whether during the whole of the fall. The Court says the defendants are liable in this action if the loss of the keel was occasioned by the want of care; although the jury from the evidence might not have been satisfied that plaintiffs were owners of the keel at the time, either from the vagueness of the testimony or from the appearance and demeanor of Oscar Nicolas.

4. The same observations apply as to the assertion in the instruction that a storm arose. There is testimony tending to prove, and perhaps the Court might think fully proving the fact; but its existence should have been left to the jury to find from the testimony.

5. The instruction is evidently erroneous in leaving it to the jury whether there was a want of care in omitting reasonable efforts to rescue the keel-boat after it had struck ; thus assuming and so stating to the jury that defendants had omitted reasonable efforts to rescue the keel.

6. The instruction then proceeds and says that " if the jury find that there was such want of care, and that the keel-boat was thereby destroyed, they will find for the plaintiffs." This part of the instruction takes all the rest of the case from the jury, and authorizes a recovery if they find the boat was lost for want of care, thus assuming that plaintiffs were owners of the keel, that

defendants were owners of the Mermaid, that defendants personally or by agent had the keel and were bound to return here to plaintiffs on some contract, &c.

7. The instruction is wrong also in declaring the measure of damages.

II. The instructions offered by defendants and refused, are omitted; and this Court therefore cannot know whether there is error in that refusal, and this want of knowledge is not the act of the party or his counsel. This loss, therefore, ought not to prejudice the appellants. The Court below acted, but it is not in the power of man to show what its action was, by its own omission or rather its clerks.

III. The Court erred in not granting a new trial.

1. Because the testimony shows that there was no want of care, and therefore the verdict is against evidence. I refer to the Bill of Exceptions as showing a case of no unreasonable exposure of the keel, but merely using her in just such a way as was proper. A steamboat cannot stop at every puff of wind, or at the sight of every cloud. The facts being set forth, it is a matter of law whether there was due care, and the Court is called upon to say whether there was or not.

2. Because of the newly discovered evidence contained in the affidavits of Chouteau and Call.

FIELD *for Appellees.*

I. There was no error in the instructions given to the jury.

The general proposition of law with which they set out is scrupulously correct.

The four particulars to which the jury were permitted to apply the general rule, are fairly disclosed in the evidence.

1. As to proceeding on the voyage in the night—see the following references to the testimony—Deane in Bill of Exceptions, p. 15, p. 17. Grapevine, p. 18. Parks. p. 23

2. As to the storm: Deane, p. 16. Grapevine, p. 18, p. 21 and p. 22. Parks. p. 23. Dodd, p.24.

3. As to the place of landing. Deane, p. 17. Grapevine, p. 22. Parks. p. 23 and p. 24.

4. As to the efforts to rescue the keel: Parks. p. 24.

II. There was no error in refusing the second new trial.

1. For it is not pretended the jury erred in matter of law. See Hill vs. Wilkins, 4 Mo. Rep. 86. Humbert vs. Eckert, 7 Mo. Rep. 259.

2. The affidavits of newly discovered evidence are liable to these objections: —

A. No proper diligence is shown to get the evidence, the existence of which must have been known to the officers of the boat who made the contract with Blackmore.

B. The pretended evidence goes only to one point, (i. e. the efforts to save the keel-boat,) on which obviously the case did not turn, as the jury gave the whole value of the boat.

C. Even to that point the evidence of Call is more favorable to plaintiffs than to defendants, as he proves that he could have saved the boat if he had been employed at an earlier day.

NAPTON, J., *delivered the opinion of the Court.*

This was an action of assumpsit brought by Uhrig and others as owners of the keel-boat Hornet, against Chouteau and others, owners of the steamboat Mermaid, to recover the value of the said keel-boat, alleged to have been lost through the negligence of the officers of the Mermaid. The keel-boat was hired to the Captain of the Mermaid, at the rate of $2:50 per day, to be returned in good order at the option of either party. The keel-boat was snagged and sunk whilst the Mermaid was attempt-

ing to land on the Illinois shore, just above the mouth of the Missouri.

The plaintiffs obtained a verdict, but the Court on motion of the defendants, set the same aside, and granted a new trial. The second trial resulted as the first, in a verdict for the plaintiffs for $450, the full value of the keel. A motion was made for another trial, but it was overruled and the case brought here by appeal.

The Bill of Exceptions gives the evidence on the second trial in detail. The plaintiffs endeavored to show negligence in the officers of the Mermaid, in running after night, during a storm, and in attempting to land at an unsuitable place. The evidence on the other side was designed to show, that every proper and ordinary precaution was used to prevent loss, and that the loss in fact was occasioned by the elements or perils of the river, against which the contract did not insure the defendants.

The Court gave the following instruction at the request of the plaintiffs : "The defendants, or so many of them as were owners of the steamboat at the time of the hiring of the keel-boat, are liable in the present action, if the loss of the keel-boat was occasioned by the omission of *ordinary care* on the part of the officers or hands employed on the steamboat. And by ordinary care is meant, such care as a prudent man exercises about his own property.

The jury then will consider whether there was a want of such care in either of the following particulars : —

1st. In proceeding on the voyage, under the circumstances, in the night time.

2nd. In proceeding on the voyage after a storm arose.

3rd. In the selection of the place, or in the manner of bringing the steamboat to land.

4th. In omitting reasonable efforts to rescue the keel-boat after it had struck.

And if the jury find that there was such want of care, and that the keel-boat was thereby destroyed, they will find for the plaintiffs ; and in either of the three first mentioned cases they will give the plaintiffs for damages the value of the keel-boat; and in the fourth case if they find for the plaintiffs on that alone, they will give as damages a sum equivalent to so much of the value of the keel-boat as might have been saved by such reasonable efforts to rescue it."

Instructions were asked by the defendants, but refused. They are not copied in the bill of exceptions.

The principal ground upon which the appellants ask a reversal of the

judgment is the instruction which the Court gave to the jury. This instruction is objected to, as assuming the existence of material facts which should have been stated hypothetically. Running in the night time, and after a storm arose, and omitting reasonable efforts to rescue the keel, are supposed to be assumed as facts in the instruction. If this be the proper and fair construction of the Judge's language, and it was likely so to be understood by the jury, there can be no dispute of its impropriety. The instruction is not couched in the style usually adopted, and the objections taken to them now, at least, show the policy of adhering to the customary forms of proceeding in Courts, even at the risk of tiresome repetitions, yet we do not understand them as assuming the facts about which the jury were to enquire. For example, in the fourth particular to which the attention of the jury was called, they were directed to enquire whether there was any negligence in omitting reasonable efforts to rescue the keel-boat after it had struck. This surely did not mean to assert that reasonable efforts *were* omitted, for if so, there was nothing for the jury to enquire about, as the omission of such efforts would be of itself gross negligence. So where in the first proposition the enquiry is, whether there was a want of reasonable care in proceeding on the voyage in the night time, it is not meant to assert that the voyage was prosecuted in the night time, but as there was testimony on this head, the jury were left to enquire into the fact, and to ascertain, if they found it existed, whether it amounted to negligence. The same may be said in relation to the other propositions. The charge is more special than is usual in our practice, but we know of no law which could be construed as prohibiting such instructions.

It has also been objected to this charge of the Court, that it assumes the existence of a contract between the owners of the steamboat and the owners of the keel, and takes for granted that the plaintiffs had been proved to be the owners of the one, and the defendants of the other. The language of the instruction is: "The defendants, or so many of them as were owners of the steamboat at the time of the hiring of the keel-boat, are liable," &c. This does not assume that the defendants were owners, but tells the jury that the defendants, provided they are the owners, or so many of them as may be proved to be the owners, are liable in certain contingencies specified. The instruction, it is true, does assume that there was a contract between the parties, and therein is erroneous, but as was observed in the case of Thompson vs. Botts, (8 M. R.) we are not inclined to reverse a judgment for so trivial an oversight, where it is apparent it could have produced no harm. Such inad-

vertencies will occur even with the most diligent, and the administration of justice would be exceedingly perplexing and expensive if their occurrence should be permitted to undo the deliberate judgments of our Courts, in cases where it was manifest that the same result must ensue upon a correction of the error.

The newly discovered evidence of J. W. Call, relates to a point upon which the case did not turn. The verdict of the jury was for the full value of the boat, manifesting thereby the opinion that the keel had been lost through the mismanagement or carelessness of the defendants. Call's testimony relates entirely to the efforts to raise the keel, and does not seem to have any material bearing upon the merits of the case.

After two verdicts in favor of the plaintiffs, in a case peculiarly suited to the investigation of a jury conversant with the usages of the steamboat trade, the interference of this Court upon a mere question of preponderating testimony could scarcely be expected. The judgment will therefore be affirmed;—Judge SCOTT concurring.